# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

MICHAEL BULLA,          )
      Plaintiff,        )
                    )
       v.             )     CAUSE NO.: 2:17-CV-461-JEM
                    )
NANCY A. BERRYHILL,     )
Deputy Commissioner for Operations,   )
Social Security Administration,     )
      Defendant.      )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Michael Bulla on December 14, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], filed June 20, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed for an award of benefits, or alternatively, reversed and remanded for further proceedings. On August 27, 2018, the Commissioner filed a response, and on October 2, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for reversal, with remand for further proceedings.

## I.    Background

On November 16, 2011, Plaintiff filed an application for benefits alleging that he became disabled on December 30, 2008. Plaintiff's application was denied initially and upon reconsideration. On February 12, 2014, Administrative Law Judge ("ALJ") Patricia Witkowski Supergan issued a decision finding that Plaintiff was not disabled, and Plaintiff appealed the decision. On September 14, 2016, this Court issued an opinion and order reversing and remanding the ALJ's decision, and the Appeals Council remanded the matter to the ALJ. On September 20, 2016, ALJ Supergan held a video hearing at which Plaintiff, with an attorney representative, a

medical expert, and a vocational expert testified. On September 13, 2017, the ALJ issued a second decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has had the following severe impairments: obesity, degenerative joint disease of the left shoulder, arthritis, osteoarthritis of the lumbar spine, and depression.

4. The claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently reach in all directions but not reach overhead with both upper extremities; and frequently handle, finger, and feel with both upper extremities. He can tolerate occasional exposure to and/or occasionally work around extreme cold and heat, wetness, vibration, and hazards such as moving machinery or unprotected heights. He is limited to performing simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few workplace changes.

6. The claimant has no past relevant work.

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On August 16, 2016, the claimant's age category changed to an individual of advanced age.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

10.      Prior to August 16, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.      Beginning on August 16, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform.

12.      The claimant was not disabled prior to August 16, 2016, but became disabled on that date and has continued to be disabled through the date of this decision.

13.      The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2008, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also*

*O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ failed to properly analyze the opinion of his treating physician, failed to properly assess his RFC, and improperly evaluated his subjective complaints. The Commissioner argues that the ALJ's decision was supported by substantial evidence.

The ALJ afforded "no weight" to a July 12, 2017 statement from Dr. Ken Oetter, Plaintiff's treating physician. "[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does

reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Dr. Oetter opined that Plaintiff could only walk for one block at a time, stand or sit for ten minutes at a time and less than two hours in a day, that he had "significant" limitations in reaching and handling, and that he would be incapable of even low stress work, among other restrictions. The ALJ gave Dr. Oetter's "extreme" limitations no weight because they were "inconsistent with the objective findings and longitudinal treatment history." Although the ALJ cited to evidence that would be consistent with looser restrictions, that evidence did not show that Dr. Oetter's opinions were "inconsistent" with the record. For example, addressing Dr. Oetter's opinion on Plaintiff's reaching and handling, the ALJ found: "X-rays of the left shoulder and left hand [taken in January 2012] were unremarkable with no evidence of fracture or dislocations . . . no other imaging of the shoulders was obtained to support such extreme [limitations]." The ALJ cited no evidence for the proposition that Plaintiff's limitations would be visible on an x-ray, as a fracture or dislocation or otherwise. The record does support limitations on reaching and handling, including Plaintiff's complaints and testimony and the records of two consultative examiners: Dr. Mutena Korman, who found decreased strength and range of motion in the shoulders and a "frozen" left shoulder, and Dr. Robert Bond, who opined that Plaintiff should not reach overhead. The ALJ should not have weighed Dr. Oetter's recommendations against a single exam, but rather against the entire record. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596

F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Plaintiff also argues that the ALJ erred in assessing his mental RFC. The ALJ considered a psychological consultative examination by Dr. Gary Durak indicating that Plaintiff was cooperative and alert, with concentration "intact," low-average intellectual functioning, and that he could do simple cooking, cleaning, and shopping, and associate with a few friends. Dr. Durak also noted that Plaintiff could manage his own money, which the ALJ specifically afforded "great weight." The ALJ afforded "some weight" to State agency psychological consultant Dr. Stacia Hill, who opined that Plaintiff could perform simple, repetitive tasks "with special considerations to [Plaintiff's] ability to maintain concentration, persistence and pace." The ALJ found:

> Giving some deference to the claimant's allegations, as well as the combined nature of the impairments, while also noting the limited mental health treatment and clinical findings . . . [Plaintiff's] limitations are more accurately reflected in the limitations to performing simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few workplace changes.

AR 458.

The Seventh Circuit Court of Appeals has consistently held that a limitation to unskilled work does not, by itself, account for a claimant's difficulties in focus and concentration, or his ability to perform those tasks consistently in a work environment. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding that a limitation to unskilled work did not account for

limitations in concentration, pace, and mood swings). The ALJ rejected Dr. Hill's opinion that Plaintiff required "special considerations" beyond limitation to simple and routine tasks, but did not cite to any evidence demonstrating why she did so. Although the ALJ summarized Dr. Durak's findings at length, she did not explained how they supported Plaintiff's ability to perform in a work environment. *See O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."). In setting aside Dr. Hill's opinion and instead crafting her own limitations, the ALJ effectively substituted her own judgment for that of the medical professional. The Seventh Circuit has warned that ALJs should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Plaintiff also argues that the ALJ failed to properly evaluate his subjective complaints, and overemphasized his activities of daily living in assessing his capabilities in a work context. The Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at

712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ discounted Plaintiff's allegations of diminished memory and concentration in part because he was driving. Plaintiff testified that he drove to the store and back three times ("a couple of miles") in the two weeks before the hearing. The ALJ provided a lengthy description of the challenges of driving: "The operation of a vehicle is a very dynamic task . . . [that] requires the making of continuous decisions/judgment calls. It also requires social interaction, and the ability to multitask while dealing with external and internal stimuli. Driving . . . is therefore made up of strategic decisions . . . maneuvering decisions . . . and control decisions . . .". Ultimately, the ALJ found: "While the claimant contends that his functional abilities are severely limited, it is difficult to reconcile the fact that . . . he continued to operate a motor vehicle." The ALJ cited to no evidence or opinion for her assessment of Plaintiff's capabilities as a driver or her conclusion that the ability to drive "a couple of miles" was incompatible with diminished memory or concentration. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (remanding where ALJ went "far outside the record" to make "medical conjecture that [she] was not competent to make").

Similarly, the ALJ made much of Plaintiff's ability to manage money. Dr. Durak concluded, without elaboration, that Plaintiff was "capable of managing his funds," and Plaintiff confirmed in

a function report that he could handle a savings account and use a checkbook. The ALJ found that Dr. Durak's conclusion that Plaintiff could manage money "reflects an opinion that the claimant retains a measure of functional ability, despite the allegations of depression. The ability to manage one's own funds effectively, particularly in cases that may involve granting a relatively large sum of money to an individual at one time, requires significant cognitive facilities . . . . In addition, [managing money] requires a level of psychological stability that indicates that an individual will make decisions in their own best interests . . . ". The ALJ explicitly gave Dr. Durak's conclusion on this topic "great weight," but provided no basis for the inferences about Plaintiff's depression, or how any of it translates to Plaintiff's performance in a work context.

The ALJ gave several of Plaintiff's other household activities outsized importance. The ALJ noted that Plaintiff could wash dishes, laundry, vacuum, shop for food "for short periods," and that he needed reminders to go places but did not need someone to accompany him. The ALJ cited to Plaintiff's function reports for those findings, but omitted the limitations he referenced in those reports, such as that he only did household activities in fifteen minute intervals, "cannot lift the vacuum all the time," and sometimes drops the dishes. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities.") (*citing Craft*, 539 F.3d at 680; *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)); *Denton*, 596 F.3d at 425 ("An ALJ . . . cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although the ALJ did state that Plaintiff's daily activities were not "conclusive evidence" that he could sustain full-time work, she concluded that "viewed in combination with the objective evidence and the claimant's course of treatment . . . they demonstrate an ability to stand or walk for six hours total in an eight-hour day,

10

sit for six hours total in an eight-hour day, perform postural and manipulative activities, and concentrate on a regular and continuing basis." The ALJ did not explain the connection between limited housework done fifteen minutes at a time and a day's work of standing or walking and maintaining concentration "on a regular and continuing basis," again leaving the Court without a "logical bridge" between the evidence and her conclusion. *O'Connor-Spinner*, 627 F.3d at 618.

Plaintiff requests reversal with remand for an award of benefits. An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. This record does not conclusively resolve the question of disability: in particular, the treating physician of 27 years has opined that Plaintiff cannot work, but a medical expert reviewing the record has testified that he can. Although the ALJ's analysis was flawed, remand for benefits is not appropriate. *See Allord v. Astrue,* 631 F.3d 411, 417 (7th Cir. 2011) (affirming reversal for re-hearing, rather than an award of benefits, where "contradictory inferences could be drawn from the physicians' testimony"); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) ("the record is not so clear that we can award or deny benefits on appeal").

On remand, the ALJ is instructed to consider the treating physician's opinion in the manner described in 20 C.F.R. §§ 404.1527(c), and to provide a "sound explanation" if he or she rejects that opinion. *Punzio*, 630 F.3d at 710. The ALJ must draw a logical bridge from the evidence as it appears in the record to his or her conclusions about Plaintiff's RFC, including the evidence that does not support his or her conclusions, and must not "play doctor" to craft functional limitations unsupported by medical opinion.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion. Because the ALJ assigned to this case has twice failed to craft an opinion that withstands review, the Court **RECOMMENDS** that a new ALJ be appointed.

SO ORDERED this 12th day of March, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record